THE PEOPLE OF THE STATE OF NEW YORK ex rel. LOWELL GRIFFIN, Relator, *v.* WILLIAM HUNT, Warden of Attica State Prison, Respondent.

County Court, Wyoming County, January 10, 1934

Relator in person.

*John J. Bennett, Jr., Attorney-General [William H. Tompkins, Assistant Attorney-General,* of counsel], for the respondent.

CONABLE, J. The relator was convicted upon a plea of guilty of robbery in the third degree in the Court of General Sessions in and for the county of New York. He was sentenced to imprisonment in a State prison at hard labor for a term the minimum of which should be not more than seven years, and the maximum should be not more than fourteen years; not less than five years nor more than ten years of said term being imposed by the court as increased punishment as provided by section 1944 of the Penal Law. The additional sentence of from five to ten years was imposed for the reason that it appeared that he was armed at the time of the commission of the robbery with an imitation pistol.

He asserts that upon the record the court was without authority to impose the additional sentence.

The legality of a sentence pronounced by a court may be inquired into upon the return of a writ of habeas corpus, even though the court which pronounced the sentence had jurisdiction of the defendant and of the action. (*People ex rel. Tweed* v. *Liscomb*, 60 N. Y. 559; *People ex rel. Marcley* v. *Lawes*, 254 id. 249.)

The indictment found against the defendant accused him of robbery in the first degree, and further charged that he was " then and there armed with a certain dangerous weapon, to wit, a certain imitation pistol. The said defendant, in order to accomplish the said robbery, feloniously did then and there inflict grievous bodily harm upon the said Benjamin Goodman." Upon this indictment he plead guilty to robbery in the third degree. His plea was accepted.

Upon proceedings for sentence, the complainant, Benjamin Goodman, and two police officers were sworn. It appeared from the evidence taken that the relator was a first offender, that he entered a store and required a clerk to hand over to him the contents of the cash drawer. In doing so, he made use of an imitation pistol. The complainant described the gun as a " toy gun." The first police officer in his testimony said; " It was a sort of a toy; it looked like a little automatic but was not able to shoot any cartridge; would not shoot caps." The second police officer testified that it was " a 22-calibre little blank cartridge pistol where the fire comes out through the top." He said that you could not shoot a bullet out of it but that it looked like a real pistol.

The judge of the Court of General Sessions who pronounced the sentence stated that the sentence was not less than two nor more than four years for the robbery, to which must be added not less than five nor more than ten years for committing the robbery while armed, making a total of not less than seven nor more than fourteen years.

The judgment of conviction recites that the relator was armed with a pistol, although the record elsewhere is to the effect that the object which he used in perpetrating the robbery was an imitation or toy pistol. The imitation pistol was not exhibited to the court at the time of sentence.

The learned Attorney-General has filed a memorandum in which he suggests the importance of the matters here under consideration, and propounds certain questions for the consideration of the court; the first of these is as follows: " May the court, where the defendant is indicted for robbery, first degree, while being armed with a dangerous weapon, accept a plea of guilty to robbery, third degree, which excludes the charge of being armed with a dangerous weapon,

thereafter find that the defendant was armed with a dangerous weapon?" He cites various cases holding in substance that a conviction or plea of guilty of a lesser degree of a crime amounts to an acquittal of the defendant of the major degrees of the same crime, and points out that a person armed with a dangerous weapon while committing a robbery is guilty of robbery in the first degree, as defined in section 2124 of the Penal Law.

It has been variously held that proceedings for increased punishment under sections 1943 and 1944 are not proceedings for establishing guilt, but only to enable courts to determine what sentence shall be imposed. (*People* v. *Gowasky*, 244 N. Y. 451; *People* v. *Caruso*, 249 id. 302.)

We have not been able to find a clear authority upon the question presented as above stated. The Court of Appeals, however, recently passed upon a case where additional punishment of not less than five nor more than ten years was imposed under section 1944 of the Penal Law, for the reason that the defendant was armed with a pistol, although he had plead guilty to the crime of robbery in the third degree. (*People* v. *Procito*, 261 N. Y. 376.) This case would seem to be authority for the imposition of the increased punishment for having been armed with a pistol while committing a felony, after a judgment of conviction, altogether inconsistent with the defendant's having been so armed at the time of its commission.

The second question which the learned Attorney-General suggests is: "Did section 1944 of the Penal Law on September 11, 1931, include as a weapon or instrument specified in section 1897, an imitation pistol?"

Section 1944 was added to the Penal Law by chapter 705 of the Laws of 1926. It provided at the time of its enactment as follows: "If any person while in the act of committing a felony, or attempting to commit a felony, shall be armed with a pistol or any of the weapons or instruments specified in sections eighteen hundred and ninety-six, eighteen hundred and ninety-seven or eighteen hundred and ninety-seven-a, the punishment elsewhere prescribed in this law for the felony of which he is convicted shall be increased by punishment in state's prison for not less than five nor more than ten years." Later amendments have been made, not material here.

In construing this section in the case of *People* v. *Kevlon* (221 App. Div. 224) Justice O'MALLEY (at p. 227) uses the following language: "As an additional deterrent to crimes of violence and the use of dangerous weapons in their commission, it was entirely reasonable for the Legislature to provide that any person participating therein while armed should receive punishment in addition

to that which follows the commission of the felony itself. The purpose being to prevent or deter criminals from using dangerous weapons in the commission of crime, it was but logical that the extra punishment provided should be visited only upon those in possession of such dangerous weapons."

This statement of the court was in connection with a holding that the possession of a weapon by an accomplice did not warrant the imposition of the additional sentence. Elsewhere, in construing this statute, the courts have emphasized that its purpose was to deter the commission of crime by use of dangerous weapons.

At the time of the enactment of section 1944, section 1897 of the Penal Law forbade the use of instruments and weapons therein enumerated, each one of which was a potentially dangerous instrument capable of use in inflicting serious bodily harm. There was then no mention therein of an imitation pistol. By chapter 435 of the Laws of 1931, in effect September 1, 1931, subdivision 1 of section 1897 was first amended to include an imitation pistol; the section now reads as follows: " A person who attempts to use against another an imitation pistol, or who carries, or possesses, any instrument or weapon of the kind commonly known as a black-jack, slungshot, billy, sand club, sand bag, metal knuckles, bludgeon, or who, with intent to use the same unlawfully against another, carries or possesses a dagger, dirk, dangerous knife, razor, stiletto, imitation pistol, machine gun, sawed off shot gun or other dangerous or deadly instrument, or weapon, is guilty of a misdemeanor, and if he has been previously convicted of any crime he is guilty of a felony. This subdivision shall not apply to the use or possession of an instrument or weapon commonly known as a machine gun."

Subdivision 1-a makes the possession of a machine gun a felony. Subdivision 2 forbids the use of bombs. Subdivisions 4 and 5 forbid the use of firearms without license. The other subdivisions of the section are administrative provisions with reference to the issuance of licenses.

The effect of the amendment of 1931 was to make it a crime to attempt to use an imitation pistol against another, or to possess an imitation pistol with intent to use the same unlawfully against another.

The question to be determined here is whether it was the intention of the Legislature by this amendment not only to make a person wrongfully possessing an imitation pistol guilty of crime under section 1897, but also to subject him to the additional punishment provided by section 1944, to the same extent as if he possessed a real pistol or one of the other dangerous weapons listed in the section.

Robbery is a serious crime under any circumstances; it always involves force or fear. It becomes much more serious when the perpetrator has prepared himself to inflict serious physical injury upon others while in the commission of it. On the other hand, the difference in culpability between committing a robbery entirely unequipped, and committing one equipped only with an imitation of a weapon, with which no actual bodily harm could be inflicted, is not great.

The statute being a highly penal one, the defendant is entitled not only to a fair but even to a strict construction of it. (*People* v. *Duplan Silk Corp.*, 208 App. Div. 435; *People* v. *Phyfe*, 136 N. Y. 554; *People* v. *Schmidt*, 221 App. Div. 77; *People* v. *Foster*, 204 id. 295.)

It is to be noted that section 1944 provides that the person committing the felony or attempting to commit it, in order to incur the additional penalty must be *armed* with a pistol or one of the weapons or instruments specified, etc. In deciding the matter before us, it seems that proper significance should be given to the word " armed " as it occurs in the statute. The statute does not prescribe that a person shall be liable to the additional punishment *who carries or who has on his person* one of the weapons or instruments specified in section 1897. It says he must be *armed* with one of them. It is clear that the imitation pistol in this case was not a pistol or weapon of any kind; it merely looked like one.

The word " armed " is defined in Bouvier's Law Dictionary as " furnished with weapons of offense or defense." It is defined in Corpus Juris (Vol. 5, p. 285) as " furnished or equipped with weapons of offense or defense." Cyc. (Vol. 40, p. 852), citing Bouvier's Law Dictionary, defines a weapon as " an instrument of offensive or defensive combat." Cyc. (Vol. 40, p. 852) gives the following definition: " In its most comprehensive signification, the term *arms* includes every description of weapon or thing which may be used offensively or defensively."

Prior to the amendments made in 1931 to section 1897, it was held that possession of a pistol so permanently out of repair or defective as to be incapable of use as a weapon did not violate the section. (*People* v. *Simons*, 124 Misc. 28; *People* v. *Thompson*, 227 App. Div. 712.)

It would seem that a reasonable construction of section 1944 would contemplate that the additional punishment prescribed by it should be applied only to one who commits a felony when equipped with one of the articles specified in section 1897, which is in fact an instrument or weapon of the nature that a man may be *armed* with it.

In the case at bar the relator, in committing his crime, was

possessed of a small imitation pistol; it could not shoot a bullet and was evidently entirely harmless. It does not seem that he could be *armed* with an imitation pistol any more than he could be *armed* with, for example, a false face or mask of frightful aspect, which likewise could not be used as a weapon of offense or defense.

It seems that the court was without authority to impose the added punishment of not less than five nor more than ten years, under section 1944. The sentence imposed, therefore, of not less than four nor more than fourteen years, must be regarded as invalid. (*People* v. *Kevlon*, 221 App. Div. 224.)

Where an illegal sentence has been imposed after a valid conviction, the proper practice to be followed in a habeas corpus proceeding is to dismiss the writ and order the relator returned to the court for resentence. (*People ex rel. La Pierre* v. *Heacox*, 231 App. Div. 652; *People ex rel. Marcley* v. *Lawes*, 254 N. Y. 249.)

It is our conclusion, therefore, that the writ should be dismissed and the relator returned to the sheriff of the county of New York, to be dealt with by the Court of General Sessions of the County of New York. Let an order be entered accordingly.