475 P.2d 492

Beverly PLONKEY, Petitioner,

v.

The SUPERIOR COURT of Arizona, IN AND FOR the COUNTY OF COCONINO, and J. Thomas Brooks, a Judge thereof, John Calley and Jane Doe Calley, husband and wife, and Williams Hospital, Respondents.

No. 9940.

Supreme Court of Arizona, In Banc.

Oct. 16, 1970.

Leven B. Ferrin and Raymond Huffsteter, Phoenix, for petitioner.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, Phoenix, for John and Jane Doe Calley.

Fennemore, Craig, von Ammon, McClennen & Udall, Phoenix, for Williams Hospital.

McFARLAND, Justice.

This case is before us on a petition for special action filed by the petitioner Beverly Plonkey (hereinafter referred to as petitioner) against the Superior Court of Coconino County, Arizona, and Judge J. Thomas Brooks. We accepted jurisdiction

of the special action, and ordered the writ of mandamus to be issued granting the petitioner the right to use Dr. Philip Kolnick as an expert witness in the above cause in which the petitioner is plaintiff, and John Calley and Jane Doe Calley, husband and wife, and Williams Hospital are defendants.

The petitioner filed a complaint on January 25, 1968, against John Calley, a medical doctor, alleging malpractice in his treatment of petitioner; that interrogatories were mailed to petitioner by attorneys for respondents requesting specifically the list of all witnesses, including expert witnesses. On the 25th day of July, 1968, a pre-trial conference was held before Judge J. Thomas Brooks, at which time the court ordered that discovery be completed on or before the first day of October, 1969, and that the names of all witnesses be exchanged by opposing counsel on or before September 1, 1969, and set the trial for February 2, 1970.

The order of the court required the following:

"IT IS FURTHER ORDERED that any witnesses to be called by the parties in addition to those submitted at the time of pretrial conference, with the exception of rebuttal witnesses, shall be disclosed to opposing counsel on or before the first day of September, 1969.

"IT IS FURTHER ORDERED that discovery shall be concluded on or before the 1st day of October, 1969."

The pre-trial statement listed defendant and a Dr. Ergenbright to be called as the expert witnesses. Depositions were taken of Dr. Goodfarb in December 1969; and of Dr. Manning and Dr. Goodfarb in January 1970. On January 21, 1970, the petitioner made a motion to the trial court for an "order allowing testimony of Dr. Philip Kolnick." Petitioner states in her verified petition that she had diligently attempted to obtain a medical expert to testify to the alleged malpractice of respondent, Dr. John Calley, but was unable to do so until January 21, 1970; that on that date Dr. Philip Kolnick, a medical doctor practicing in Maricopa County, reviewed the file of medical reports and X-rays involved, and advised the petitioner of his willingness to testify that respondent had failed to comply with the standards of care in that community—that on the same date a call was made to the attorneys for respondents informing them of petitioner's intention to call Dr. Kolnick, and on the 22nd day of January 1970, formal petition was filed to use Dr. Philip Kolnick as an expert witness in the trial.

Petitioner also states that attorneys for respondents actually conversed with Dr. Kolnick and questioned him as to what his testimony would be before the hearing. Petitioner offered to agree to a continuance of the trial from February 2, 1970, if requested by the respondents and to give respondents time to take a deposition of Dr. Kolnick. Respondents objected to granting permission for Dr. Kolnick to testify, and to any postponement of the trial, based upon the grounds that the petitioner had had sufficient time to find and disclose the name of Dr. Kolnick as an expert witness before the date of the limitation in the order of October 1, 1969; also objected to a postponement for the reason that their own expert witnesses had scheduled their practice to permit them to testify on the dates of the trial; also stating that the attorneys would not have time to prepare for cross-examination in the week before February 2, 1970. After notice and hearing, the Honorable J. Thomas Brooks denied the petition.

Rule 16(a), Rules Civ.Proc., 16 A.R.S. subsection 6, provides that:

"Rule 16. Pre-trial procedure; formulating issues

16(a) Formulating issues. In any action, the court may in its discretion direct the attorneys for the parties to appear before it for a conference to consider:

\* \* \* \* \* \*

6. Such other matters as may aid in the disposition of the action.

The court shall make an order which recites the action taken at the confer-

ence, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. The order when entered controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice. The court in its discretion may establish by rule a pre-trial calendar on which actions may be placed for consideration as above provided and may either confine the calendar to jury actions or to non-jury actions or extend it to all actions."

The respondents in their memorandum before the trial court resisted the motion to allow Dr. Philip Kolnick to testify.

In Carver v. Salt River Valley Water Users' Association, 104 Ariz. 513, 456 P.2d 371, holding that we would not reverse a trial court's exclusion of testimony of witness in such instances, unless the trial court abused its discretion, we said:

"There is precedent under Federal Rules 33 and 37 to exclude a witness' testimony where there has been a failure to disclose. Thompson v. Calmar Steamship Corp., 3 Cir., 331 F.2d 657; Taggart v. Vermont Transportation Co., D.C., 32 F.R.D. 587, affirmed 3 Cir., 325 F.2d 1022; and Newsum v. Pennsylvania R. Co., D.C., 97 F.Supp. 500. There are also cases from state courts which have approved the total exclusion of a witness' testimony where a statute or rule expressly or inferentially authorizes the trial court to impose such sanctions. (cases cited)

And see Fairbanks Publishing Co. v. Francisco, Alaska, 390 P.2d 784, 798 where it was held error for the trial judge to permit a witness to be called who had not been disclosed in violation of the judge's pre-trial order.

Accordingly, we conclude that the trial court's order excluding the testimony of plaintiff's witnesses is not without legal precedent, although admittedly it is extreme in nature and seldom invoked.

\*   \*   \*   \*   \*   \*

"The trial judge found that there was no showing that 'with due diligence these witnesses could not have been discovered prior to the deadline' noting that the pre-trial judge asked and counsel had assured him they would be prepared for trial on the day fixed. On this record we are not prepared to say that there was a clear abuse of discretion by the trial judge in denying the plaintiff's motion for a continuance and granting the motion to exclude the surprise witnesses. \* \* \*"

▮ It will be noted that this court pointed out that a trial court's excluding testimony of a plaintiff witness "is not without legal precedent, although admittedly it is extreme in nature and seldom invoked." This is true because in the granting of such a motion against a party solely for disobedience of a discovery order as a stringent measure should be employed only with caution and restraint—particularly where there is a risk of the injustice of depriving a party of a meritorious cause of action or defense. One of the tests which should be made by the trial court is whether the failure to answer an interrogatory was wilful. In Zakroff v. May, 8 Ariz.App. 101, 443 P.2d 916, the court stated:

"It should be borne in mind that the granting of a judgment against a party solely for disobedience of a discovery order is a stringent measure which should be employed with caution and restraint. Less serious sanctions undoubtedly could be resorted to in order to accomplish the desired result, especially where there is any risk of injustice by depriving a party of a meritorious cause of action or defense. At the very least, the trial court should determine whether the failure to answer interrogatories was willful, Frates v. Treder, 249 Cal.App.2d 199, 57 Cal.Rptr. 383 (1967); Fairfield v. Superior Court, 246 Cal.App.2d 113, 54 Cal. Rptr. 721 (1966), and whether the cir-

cumstances are so aggravated as to justify the drastic action."

Other courts have spoken of preclusion of testimony as a "drastic remedy." In Syracuse Broadcasting Corporation v. Newhouse, 271 F.2d 910 (C.A.2d Cir.) the court, in discussing the exclusion remedy, stated:

"At the same time, however, it must be remembered that a preclusion order is a drastic remedy, Matheny v. Porter, 10 Cir., 1946, 158 F.2d 478, and while the district court clearly has the power to issue such an order, Walker v. West Coast Fast Freight, Inc., 9 Cir., 1956, 233 F.2d 939, 3 Moore's Federal Practice 1130 (2d edition 1948), that power should be exercised only to the extent necessary to achieve the desired purpose—that is, an entirely just disposition of the case in a speedy and efficient manner. Of course, in view of its intimate knowledge of the facts, discretion must be accorded the district court in its resolution of these administrative problems. This of necessity must be so, but when we are convinced that the court below has exceeded a proper discretion in that the order imposed was too strict or was unnecessary under the circumstances, we would be remiss in our duties if we did not set that order aside." Id. at 915.

The facts in the instant case clearly show delay in the listing of the name of Dr. Philip Kolnick was not wilful, or in any way an attempt to take advantage of the respondents. The petitioner's attorney, in support of her motion to permit the testimony of Dr. Kolnick, filed his affidavit in which he stated:

"That he has searched diligently among the medical profession and the legal profession in an attempt to find an expert witness who would testify for the plaintiff in this case and has been unsuccessful in that the doctors all refused to be involved in a case where a doctor is being sued for mal-practice.

"However, on January 20, 1970 a consultation was had with Doctor Phillip Kolnick who reviewed the x-rays in this matter and the complete file and who has agreed to testify as an expert witness for the plaintiff."

This sworn statement by the attorney for the petitioner is not controverted by an affidavit or testimony of the respondents except by argument in respondent's memorandum. The respondents-defendants filed a response in opposition to the motion for allowing testimony of Dr. Philip Kolnick at the trial, but stated:

"This Response is predicated upon the Memorandum of Points and Authorities hereinafter attached."

The respondents-defendants, in their memorandum, relied on the record which had been made in the case up to that time —principally on the fact that the case had been pending for a period of two years, and that petitioner-plaintiff had had from the 25th day of July 1968, the date of the pre-trial conference, to September 1, 1969, for the exchange of witnesses in accordance with the pre-trial order, from which he argued that it was sufficient time for the petitioner to have found her expert witness. He also bases his objection on the inconvenience to his own witnesses—particularly his expert witness.

The trial court was confronted then with the weighing of the hardships to the respondents-defendants against the petitioner's going to trial without an expert witness to testify in regard to the question of whether the practice used by the respondent, Dr. John Calley, had failed to comply with the standard of care in the community, which was really the gist of her lawsuit. The petitioner made every possible effort to accommodate the respondents' attorney by the immediate taking of Dr. Kolnick's deposition and agreeing to a postponement. The trial court, however, found these were matters presented not in affidavits but in oral arguments and memorandum to the court. Had the court allowed the testimony to be admitted at the time the motion was made there undoubtedly would have been inconvenience and some extra expense to the defense. But this must be weighed with the

**314**

question of whether the ends of justice required that there be a trial upon the principal question in the case—namely, whether Dr. John Calley had failed to comply with the standards of care in the community.

The question then is whether the trial court abused its discretion in denying the petitioner-plaintiff this privilege. The attorney for petitioner had, in his affidavit, stated that he had searched diligently among the medical profession and in his legal profession without success, and also that the doctors "all refused to be involved in a case where a doctor is being sued for malpractice." This was the only evidence before the court on this question. The court, however, stated:

> "I find specifically that the defense would be unduly and unnecessarily prejudiced if the plaintiff is allowed to use this expert witness at this late date. I do not agree and will not take any judicial notice of the fact that it is practically impossible to find doctors to testify in malpractice cases because I have seen many meritorious cases where physicians were easily obtainable and I think a two year period is sufficient time within which to find one.
>
> "It is therefore ordered denying plaintiff's motion."

■ This statement of the court shows that the denial of the motion was based at least partially upon the experience of the court in other cases. While it was a natural thing for the court to do, and for this reason we do not feel that we should be too critical of the court in this regard; however, this evidence which the court was considering was not before the court in this trial, and the petitioner had no opportunity to refute it. We therefore accordingly hold that it was abuse of the court's discretion to use its own experience as evidence in the instant case.

In Washington Hospital Center v. Cheeks, 129 U.S.App.D.C. 339, 394 F.2d 964 in an opinion written by Judge Burger he stated:

> "Rule 16 of the Federal Rules of Civil Procedure provides that a pre-trial order 'controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice.' Among the factors to be considered when a pre-trial order is modified during trial are the weighing of possible hardship to the parties and doing justice to the merits of the claim. 3 Moore, Federal Practice ¶ 16.20 (1967) * * *"

■ In the instant case we hold that the merits of the case required that Dr. Philip Kolnick be permitted to testify. The writ of mandamus is made permanent.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.