544 P.2d 1091

**STATE of Arizona, Appellee,**

**v.**

**William Allen SAUVE, Appellant.**

**No. 3160.**

Supreme Court of Arizona,
In Banc.

Jan. 29, 1976.

Bruce E. Babbitt, Atty. Gen. by Thomas A. Jacobs, Asst. Atty. Gen., Phoenix, for appellee.

F. M. Aspey, Flagstaff, for appellant.

HOLOHAN, Justice.

The defendant appeals from a conviction and sentence for the crime of first degree burglary. This Court took jurisdiction pursuant to Rule 47(e)(5), Rules of the Supreme Court, 17A A.R.S.

The defendant, on appeal, contends that the trial court committed reversible error in two respects, namely, that it denied defendant's motions to suppress and allowed into evidence certain physical evidence and statements allegedly procured in violation of his Fourth, Fifth and Fourteenth Amendment rights.

The defendant made a timely motion to suppress the introduction of a T.V. channel changer seized from his vehicle and also moved to suppress a statement made while the defendant was in custody. The trial court denied both motions. The channel changer and the statement of the defendant were later introduced, over the defendant's objection, in evidence at his trial.

At the hearing on defendant's motion to suppress, the court was presented with the following facts. Defendant had been arrested for burglary on June 10th and detectives Allen and Tarr interviewed the defendant on that date. The defendant's vehicle containing the evidence was parked in his driveway at the southwest corner of his home. The detectives knew that the defendant was one of the co-owners of the subject vehicle. On June 11th the detectives went to the defendant's home for the stated purpose of obtaining a description of the vehicle in order to secure a search warrant for it and thereafter search it for the missing items. At the time that they arrived at the dwelling, the vehicle was unoccupied, parked on private property, and was not then being used for any illegal purpose. In order to inspect the vehicle and discover the evidence the policemen had to enter upon private property. At no time prior to the entry and subsequent inspection and seizure of the property had the police sought or obtained a search warrant. At the time the detectives arrived at the residence the defendant had already been charged and incarcerated for the instant burglary; the detectives had previously interrogated the defendant, were looking for a specific T.V. channel changer, and suspected that it was located in the subject vehicle. After entering upon the premises one of the detectives looked in the window of the subject vehicle and observed a T.V. channel changer. Thereafter the three policemen discussed their prior plan of having one of them remain at the scene until a warrant could be procured, but determined that a search warrant was not necessary because no search was involved since the evidence was in plain view. One of the detectives then opened the door of the vehicle and seized the channel changer.

■ Since there was admittedly no search warrant in the present case the burden is upon the state to show the presence of one of the accepted exceptions to the warrant requirement in order to make the seized evidence admissible in this criminal action. *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

■ The state contends that exigent circumstances authorize the seizure without a warrant. There are no factual matters of record to support this ground; indeed the testimony of the officers shows that the reverse was the case. There was ample opportunity for one of the officers to watch the vehicle while the other secured a warrant.

The state contends that the seizure was proper because the "plain view" doctrine was applicable thereby obviating the necessity of a warrant. The state misconceives the notion of "plain view." In *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct.

**578**

2022, 29 L.Ed.2d 564 (1971), the United States Supreme Court spoke on the subject:

"The limits of the doctrine are implicit in the statement of its rationale. The first of these is that plain view *alone* is never enough to justify the warrantless seizure of evidence. This is simply a corollary of the familiar principle discussed above, that no amount of probable cause can justify a warrantless search or seizure absent 'exigent circumstances.' Incontrovertible testimony of the senses that an incriminating object is on premises belonging to the criminal suspect may establish the fullest measure of probable cause. But even where the object is contraband, this Court has repeatedly stated and enforced the basic rule that the police may not enter and make a warrantless seizure. [Citations omitted.] The second limitation is that the discovery of evidence in plain view must be inadvertent. The rationale of the exception to the warrant requirement, as just stated, is that a plain-view seizure will not turn an initially valid (and therefore limited) search into a 'general' one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as '*per se* unreasonable' in the absence of 'exigent circumstances.'" 403 U.S. at 468–71, 91 S.Ct. at 2039–40, 29 L.Ed.2d at 584–586.

Since the *Coolidge* decision the United States Supreme Court has decided two further cases dealing with warrantless searches and seizures of automobiles. *Cady v. Dombrowski,* 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) and *Cardwell v. Lewis,* 417 U.S. 583, 94 S.Ct. 2464, 41 L. Ed.2d 325 (1974). The decisions in *Cardwell* and *Cady* leave undisturbed the rule in *Coolidge* requiring a search warrant prior to the search of a vehicle unoccupied, parked on private property, and, at the time, not being used for any illegal purpose.

There was no justification for the seizure without a warrant, and the resulting evidence was not admissible. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed. 2d 1081 (1961).

The defendant's second claim of error concerns the admission in evidence of a statement made by the defendant. When initially driven home by the police at approximately 1:50 a. m. the defendant was intoxicated, disoriented, and staggered badly. When he arrived home he entered the subject vehicle and either went to sleep or passed out. Between 4:00 and 5:00 a. m. the defendant was awakened and taken from the vehicle by the police without a warrant and taken to the police station. Between 6:30 and 7:00 a. m. the defendant was taken from his cell to the detectives' office and given his *Miranda* warning. One of the detectives then asked the defendant if he wanted to talk about the alleged crime and the defendant said no. Thereafter one of the detectives pointed to a box located on the desk which contained items taken in the burglary, and he told the defendant that they had a good case against him and that they would probably find his fingerprints on the bottles. The reply of the defendant is disputed, but the officers testified that the defendant admitted that his fingerprints would be found on the stolen property. The defendant's motion to suppress the statement on the basis of the Fifth and Fourteenth Amendments was denied, and the statement was admitted into evidence over the defendant's objection.

In *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) the United States Supreme Court said:

"Once warnings have been given, the subsequent procedure is clear. If the in-

dividual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked." 384 U.S. at 473–74, 86 S.Ct. 1627–28, 16 L.Ed.2d at 723.

 The state argues that the defendant made a spontaneous statement that was not in response to any interrogation or coercion and as such effected a waiver of his previously invoked right to remain silent. The United States Supreme Court has recently spoken on the *Miranda* guidelines in *Michigan v. Mosley,* —— U.S. ——, 96 S. Ct. 321, 46 L.Ed.2d 313 (1975). The Federal Supreme Court reaffirmed the holding in *Miranda,* and the Court stated that the admissibility of a statement obtained after the person in custody has decided to remain silent depends on whether his right to cut off questioning was "scrupulously honored."

In the *Mosley* case the accused, after being advised of his rights, stated he did not want to answer any questions about the crimes under investigation. All questioning ceased. Some two hours later the accused was brought from his cell to the office of another detective to be questioned about a homicide. The accused was again advised of his rights in compliance with *Miranda,* and this time the accused elected to answer questions. The resulting statement was held to be admissible. The Federal Supreme Court pointed out that the second interrogation did not undercut the accused's previous decision not to answer questions.

The case at issue presents a different situation. The defendant's right to cut off questioning was not scrupulously honored. After the defendant's refusal to answer questions, the officers ceased interrogation, but their subsequent conduct and statements were made to persuade the defendant to reconsider his position. Any response under such circumstances cannot be considered "volunteered," and the statements were not admissible.

The conviction is reversed, and the case is remanded to the trial court for a new trial in accordance with the views expressed in this opinion.

CAMERON, C. J., STRUCKMEYER, V. C. J., and HAYS and GORDON, JJ., concurring.